F. W. PATY, Appellant, v. J. R. SMITH, Respondent.

## No. 2941; July 9, 1872.

**Probate Court—Time of Creation of Jurisdiction.**—The probate courts have no jurisdiction of the estates of persons who died previously to the time of the enactment of the probate laws of the state.

**Probate Sale—Estate of Person Deceased in 1850.**—A sale, under an order of a probate court, on the 4th of October, 1851, of lands of a person dying on the 14th of February, 1850, could be of no valid effect.

**Infant—Sale of Estate by Mother.**—A Special Act of the Legislature intending to empower the mother, and as such the natural guardian, of an infant to sell the interest of such infant in his deceased father's estate, would not bestow the power intended.

APPEAL from Twelfth Judicial District, San Francisco County.

Barstow, Stetson & Houghton for appellant; Daingerfield & Olney for respondent.

See Paty v. Smith, 50 Cal. 153.

BELCHER, J.—This is an action to recover possession of the undivided one-fourth of certain premises situated in the city of San Francisco. William Paty became the owner of the premises in 1849 and died intestate on the 14th of February, 1850, leaving as his heirs at law his widow and three minor children. One of these children, Charles M. Paty, died in 1857, under age and never having been married. Francis W. Paty, the plaintiff, is one of the surviving children, and claims as the heir of his father and brother.

On the 25th of February, 1850, letters of administration upon the estate of William Paty were granted by John W.

Geary, "Alcalde and ex-officio Probate Judge," to John H. Gleason and John Paty, who thereupon duly qualified as such administrators, filed bonds, inventories, etc.

No other steps appear to have been taken toward settling the estate until the 31st of July, 1851, when Gleason, one of the administrators, filed a petition in the probate court asking for an order to sell the premises in controversy to pay the debts of the estate. An order to sell was made by the court and the property sold to the grantor of the defendant on the 4th of October, 1851.

On the 6th of May, 1861, an act was passed by the legislature (Stats. 1861, p. 293), entitled "An act to authorize the guardian of Francis William Paty to sell and convey certain real estate," in these words:

"Section 1. Martha Ann Paty Dayley, the mother and guardian of Francis William Paty, a minor, is hereby authorized and empowered to sell at public, or private, sale, in her discretion, any, or all, of the real estate, or interest therein, of the said Francis William Paty as shall in her opinion most promote his interests.

"Sec. 2. On making any such sale, or sales, the said Martha Ann Paty Dayley may convey the property so sold to the purchaser, or purchasers, thereof, and receive the purchase money therefor, and the title so conveyed shall be valid, and convey all the interest of the said minor in the property so sold.

"Sec. 3. The said Martha Ann Paty Dayley shall account for the proceeds of such sales as for any other assets in her hands pertaining to said minor.

"Sec. 4. No deed, or conveyance, of the said real estate, or any part thereof, made under the provisions of this act, shall be valid, or convey any title, unless the sale shall have been confirmed by the Probate Court, previous to the execution of such deed of conveyance."

In pursuance of this act Mrs. Paty, who had become Mrs. Dayley, by intermarrying with one James Dayley in 1860, for a valuable consideration sold to the defendant's grantor all the interest of Francis W. Paty in the premises in controversy, and having reported such sale to the probate court and obtained its confirmation thereof, executed to the purchaser a deed.

It does not appear that Mrs. Dayley was ever appointed the guardian of Francis W. Paty in this state, but she was appointed such guardian by a probate court in the state of Massachusetts in the year 1850 and by the supreme court of the Hawaiian Islands in the year 1856.

1. It is agreed that Francis W. Paty, as the heir of his father, took an undivided one-sixth interest in the premises. Under the seventh subdivision of the first section of the act concerning descents and distributions, he inherited from his brother, Charles M. Paty, an undivided one-twelfth, making his whole interest one undivided fourth: De Castro v. Barry, 18 Cal. 96.

2. It has been settled by a series of decisions in this state that the probate courts have no jurisdiction of the estates of persons who died prior to the passage of our probate laws: Grimes v. Norris, 6 Cal. 621, 65 Am. Dec. 545; Tevis v. Pitcher, 10 Cal. 477; De la Guerra v. Packard, 17 Cal. 182; Downer v. Smith, 24 Cal. 123; Coppinger v. Rice, 33 Cal. 408. Under the authority of these decisions it must be held that the order of the probate court, under which the premises were sold on the 4th of October, 1851, was without jurisdiction and void. Ryder v. Cohn, 37 Cal. 69, is not in conflict with the cases above cited.

3. We do not consider that the question as to whether the legislature can constitutionally, by a special act, authorize a guardian to sell, at his discretion, the real property of his ward arises in this case. It does not appear that Mrs. Dayley was ever appointed the guardian of the plaintiff in this state, and her appointments as such in Massachusetts and in the Hawaiian Islands were local and could have no effect outside of the jurisdictions where they were made: Morrell v. Dickey, 1 Johns. Ch. (N. Y.) 156; Story's Conflict of Laws, sec. 499. The special act calls her guardian, but it was neither its purpose nor effect to constitute her such, nor does it furnish any evidence that she had, in fact, been appointed: Kimball v. Semple, 25 Cal. 446. Moreover, after her marriage to Dayley she was disqualified from either receiving or holding such an appointment: Act for the Appointment of Guardians, sec. 5. She was the natural guardian of the person of her minor son, but as such had no authority to sell or in any way to dispose of his property: Kendall v. Miller, 9 Cal. 591; May

v. Calder, 2 Mass. 55; Combs v. Jackson, 2 Wend. (N. Y.) 157, 19 Am. Dec. 568.

The only question, then, is: Could the legislature authorize her, as mother and natural guardian, to sell in her discretion any or all of her son's real estate ''as shall in her opinion most promote his interests''?

In Brenham v. Story, 39 Cal. 179, there was called in question the constitutionality of an act of the legislature very similar in its terms to the act of May 6, 1861. That act authorized the administrator to sell at his discretion ''the whole or any portion of the real estate, or any right, title or interest therein, claimed, held or owned by the said Charles White at the time of his death, as in the judgment of the administrator will best promote the interest of those entitled to the estate.'' It was held that the administrator had no right to sell the estate for the purpose of promoting the interest of the heirs, and that the act which authorized him to do so was unconstitutional and void.

We consider that case as decisive of this. If the administrator, as such, cannot be permitted to speculate with the property of the estate when he may judge it will promote the interest of the heir, neither can the mother, as such, speculate with the property of her son because in her opinion it will promote his interest. The same considerations of policy and law which forbid the one equally forbid the other.

As mother and natural guardian she is in no way charged with the possession, control or management of her son's estate, and can no more be permitted to sell it to promote his interest than could any third person who sustained no relations toward the estate or its owner.

Judgment and order reversed and cause remanded.

We concur: Crockett, J.; Wallace, C. J.; Rhodes, J.